JACOB KARABELL*, DC 996066
APRIL PULLIUM*, VA 90994
**BREDHOFF & KAISER, PLLC**
805 15th St. NW, Suite 1000
Washington, DC 20005
Telephone:    (202) 842-2600
Facsimile:    (202) 842-1888
Email:        jkarabell@bredhoff.com
              apullium@bredhoff.com

ANDREW H. BAKER, SBN 104197
**BEESON, TAYER & BODINE, APC**
483 Ninth St., 2nd Floor
Oakland, CA 94607-4051
Telephone:    (510) 625-9700
Facsimile:    (510) 625-8275
Email:        abaker@beesontayer.com

ATTORNEYS FOR DEFENDANT
AFSCME LOCAL 2700

* ADMITTED *PRO HAC VICE*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK R. SMITH,<br><br>Plaintiff,<br><br>vs.<br><br>KATE BIEKER, CHIEF EXECUTIVE OFFICER, SUPERIOR COURT, COUNTY OF CONTRA COSTA; AFSCME LOCAL 2700, AND XAVIER BECERRA, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF CALIFORNIA<br><br>Defendants. | Case No.: 3:18-cv-05472-VC<br><br>**DEFENDANT AFSCME LOCAL 2700'S NOTICE OF MOTION, MOTION FOR SUMMARY JUDGMENT, AND MEMORANDUM IN SUPPORT THEROF; AND RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date: April 25, 2019<br>Time: 10:00 a.m.<br>Courtroom 4, 17th Floor<br>Judge Vince Chhabria |

## **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................... 1

STATEMENT OF UNDISPUTED FACTS AND PROCEDURAL HISTORY .......................... 2

ARGUMENT ............................................................................................................ 6

I.      The Court Lacks Jurisdiction over Plaintiff's Claims for Declaratory Relief .............. 6

II.     Even if the Court Had Jurisdiction To Consider Plaintiff's Claim that SB 866 Is
        Unconstitutional, That Claim Would Fail on the Merits ............................................... 9

III.    Plaintiff's First Amendment Claim for Nominal Damages Fails Because Local 2700
        Did Not Act Under Color of Law ................................................................. 9

IV.     Even if the Deduction of Plaintiff's Union Dues Amounted to State Action, Local
        2700 Did Not Violate Plaintiff's First Amendment Rights ....................................... 16

        A. The Supreme Court's decision in Janus does not allow Plaintiff to renege on his
           voluntary dues-deduction authorization agreement ....................................... 16

        B. The Employee Authorization Forms that Plaintiff Signed Do Not Alter Local 2700's
           Ability To Enforce Plaintiff's Membership Contract .................................... 22

CONCLUSION ........................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abood v. Detroit Bd. of Educ.*,
  431 U.S. 209 (1977)................................................................................................17

*American Mfrs. Mut. Ins. Co. v. Sullivan*,
  526 U.S. 40 (1999)..................................................................................................13

*Bayer v. Neiman Marcus Grp., Inc.*,
  861 F.3d 853 (9th Cir. 2017) ...................................................................................7

*Belgau v. Inslee*,
  2019 WL 652362 (W.D. Wash. Feb. 15, 2019).........................................11, 13, 14

*Blum v. Yaretsky*,
  457 U.S. 991 (1982).........................................................................................13, 14

*Boy Scouts of Am. v. Dale*,
  530 U.S. 640 (2000)................................................................................................22

*Brady v. United States*,
  397 U.S. 742 (1970)................................................................................................19

*Carey v. Inslee*,
  2019 WL 1115259 (W.D. Wash. Mar. 11, 2019) ................................................8, 9

*Caviness v. Horizon Comm. Learning Ctr., Inc.*,
  590 F.3d 806 (9th Cir. 2010) ...............................................................................9, 16

*Cohen v. Cowles Media Co.*,
  501 U.S. 663 (1991)..........................................................................................18, 20

*Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*,
  527 U.S. 666 (1999)................................................................................................21

*Collins v. Womancare*,
  878 F.2d 1145 (9th Cir. 1989) ................................................................................10

*Coltec Industries, Inc. v. Hobgood*,
  280 F.3d 262 (3d Cir. 2002)..............................................................................18, 19

*Cook v. Brown*,
  2019 WL 982384 (D. Or. Feb. 28, 2019)..................................................................8

*Curtis Publ'g Co. v. Butts*,
   388 U.S. 130 (1967)............................................................................................21

*Danielson v. Inslee*,
   345 F. Supp. 3d 1336 (W.D. Wash. Aug. 16, 2018)...................................................8

*DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Cafe & Takeout III, Ltd.*,
   30 Cal.App.4th 54 (1994) .......................................................................................24

*Edmonson v. Leesville Concrete Co.*,
   500 U.S. 614 (1991)...............................................................................................12

*Hewitt v. Helms*,
   482 U.S. 755 (1987)................................................................................................7

*Jackson v. Metro. Edison Co.*,
   419 U.S. 345 (1974)...............................................................................................12

*Janus v. AFSCME, Council 31*,
   138 S. Ct. 2448 (2018).......................................................................................1, 17

*Johnson v. Zerbst*,
   304 U.S. 458 (1938)...............................................................................................21

*Kidwell v. Transp. Commc'n Int'l Union*,
   946 F.2d 283 (4th Cir. 1991) .................................................................................17

*Knox v. SEIU, Local 1000*,
   567 U.S. 298 (2012)...............................................................................................21

*Knox v. Westly*,
   2006 WL 2374763 (E.D. Cal. Aug. 16, 2006) ........................................................15

*Lamberty v. Conn. State Police Union*,
   2018 WL 5115559 (D. Conn. Oct. 19, 2018) ..........................................................8

*Lugar v. Edmonson Oil Co.*,
   457 U.S. 922 (1982)...............................................................................9, 10, 11, 13

*Marsh v. Alabama*,
   326 U.S. 501 (1946)...............................................................................................12

*McKeesport Hosp. v. Accreditation Council for Graduate Med. Educ.*,
   24 F.3d 519 (3d Cir. 1994)......................................................................................14

*Minneci v. Pollard*,
   565 U.S. 118 (2012)...............................................................................................25

*Naoko Ohno v. Yuko Yasuma*,
   723 F.3d 984 (9th Cir. 2013) ..............................................................10, 12, 13, 14

*Old Republic Ins. Co. v. FSR Brokerage, Inc.*,
   80 Cal.App.4th 666 (2000) ........................................................................24

*Prescott v. Cty. of El Dorado*,
   298 F.3d 844 (9th Cir. 2002) ......................................................................8

*Rendell-Baker v. Kohn*,
   457 U.S. 830 (1982) ....................................................................................12

*Roberts v. AT&T Mobility LLC*,
   877 F.3d 833 (9th Cir. 2017) ......................................................................15

*Roberts v. U.S. Jaycees*,
   468 U.S. 609 (1984) ....................................................................................21

*Seven Words LLC v. Network Sols.*,
   260 F.3d 1089 (9th Cir. 2001) .....................................................................7

*Smith v. Allwright*,
   321 U.S. 649 (1944) ....................................................................................12

*Tsao v. Desert Palace, Inc.*,
   698 F.3d 1128 (9th Cir. 2012) ....................................................................12

*Tulsa Prof'l Collection Servs., Inc. v. Pope*,
   485 U.S. 478 (1988) ....................................................................................15

*Yohn v. Cal. Teacher's Ass'n*,
   2018 WL 5264076 (C.D. Cal. Sept. 28, 2018) ............................................8

**Statutes**

42 U.S.C. § 1983 .......................................................................................... *passim*

Cal. Gov. Code § 1157.12 ............................................................................5, 15

Cal. Gov. Code § 71632.5 .............................................................................6, 7

Cal. Gov. Code § 71638 ..................................................................................22

Cal. Labor Code § 300 ....................................................................................22

Cal. Stats. 2000, c. 1010 (S.B. 2140) ............................................................22

Wash. Rev. Code Ann. § 41.80.100 ...............................................................11

**Other Authorities**

7 Ops. Cal. Atty Gen. 320 (1946) ........................................................................................22

*Dep't of Personnel Admin. v. CWA*,
    PERB Decision No. 609-S, 1987 WL 1435545 (1987) ........................................................25

*Int'l Woodworkers of Am.*,
    304 NLRB 100 (1991) ........................................................................................................25

Restatement (Second) Contracts §175 (1981) ......................................................................20

Williston on Contracts, § 39:35 (4th ed.) ...........................................................................24

Defendant AFSCME Local 2700 ("Local 2700" or "Union"), by and through its counsel, hereby gives notice of its motion for summary judgment, scheduled to be heard on April 25, 2019 at 10:00 a.m.

For the reasons set forth in the accompanying memorandum, Local 2700 respectfully requests that the Court grant summary judgment in its favor on all of Plaintiff's claims.

## **INTRODUCTION**

In denying Plaintiff's motion for a preliminary injunction, this Court held that Plaintiff had not shown a likelihood of success on the merits of his claim that Local 2700 violated his First Amendment rights by having union dues deducted from his paycheck after he resigned from union membership. Specifically, the Court, in rejecting Plaintiff's arguments, held that Plaintiff waived his First Amendment right to opt out of union membership by signing a membership contract with Local 2700, which contained an authorization to have union dues deducted from his paycheck for a set period of time. ECF No. 36, at 2.

In an effort to change course, Plaintiff, in his brief, now makes much of three documents—all of which his employer emailed to him shortly before he filed this lawsuit. Those documents are employer forms through which, on September 23, 2016, Plaintiff resigned his union membership and then re-joined the Union on June 26, 2017. Plaintiff contends that the first of those forms constituted a revocation of the dues-deduction authorization in his membership contract with Local 2700, but he is incorrect: As Plaintiff conceded during his deposition, he did not revoke that dues-deduction authorization until after the Supreme Court's decision in *Janus v. AFSCME, Council 31*, 138 S. Ct. 2448 (2018). Nor did Local 2700 treat his resignation from union membership as a revocation of that dues-deduction authorization.

With that misdirection cast aside, Plaintiff is left with the same arguments that he already presented to the Court, which the Court correctly rejected. In addition, the Court need not even reach the merits of Plaintiff's claims because the Union did not act under color of state law in directing Plaintiff's employer to continue his dues deductions through November 30, 2018. We also will show that Plaintiff's claims for declaratory relief are not justiciable.

## <u>STATEMENT OF UNDISPUTED FACTS AND PROCEDURAL HISTORY</u>

Local 2700 is a local union with approximately 1,600 members in Contra Costa County, California. Ex. A, Seville Decl. ¶ 2. Among the employees represented by Local 2700 are a bargaining unit of employees of the Superior Court of California in Contra Costa County ("Superior Court"), including Plaintiff. *Id.* ¶¶ 7-8, 10. Plaintiff became an employee of the Superior Court on January 4, 2016. Ex. B, Smith Dep. Tr. 17:13-24. On the same day, Plaintiff became a member of Local 2700 by signing a union membership contract on a form prepared by the Union ("Membership Contract"). *Id.* at 29:10-30:15; 32:13-16; Ex. C, Smith Dep. Ex. 3. Plaintiff joined the union in part because he "didn't want to rock the boat," and he understood that, as a member, he would have the right to vote on union-related matters. Ex. B, Smith Dep. Tr. 41:20-42:9; *see also id.* at 47:9-48:7; 49:15-50:11.

Plaintiff's Membership Contract contained a dues-deduction authorization through which he agreed to pay his union membership dues by having those dues deducted *pro rata* from his Superior Court paychecks. Ex. A, Seville Decl. ¶ 7. That authorization, by its express terms, was "voluntary and not a condition of [Plaintiff's] employment." Ex. C, Smith Dep. Ex. 3. It specifically provided that:

> [t]his voluntary authorization shall be irrevocable, *regardless of whether I am or remain a member of the Union*, for a period of one year from the date of execution or until the termination date of the memorandum of understanding or

collective bargaining agreement (if there is one) between the Employer and the Union, whichever occurs sooner, and for year to year thereafter. . . .

*Id.* (emphasis added). The Membership Contract specified that, for the dues-deduction authorization to be revoked, Plaintiff must "give the Employer and the Union written notice of revocation not less than ten (10) days and not more than twenty (20) days before the end of any yearly period." *Id.*

      An advance commitment by a union member to pay dues through payroll deduction for a set period of time, such as the authorization signed by Plaintiff, serves important interests for the Union. It provides increased funding predictability, allowing the Union to prepare responsible budgets and make long-term funding commitments. Ex. A, Seville Decl. ¶ 6. An advance dues commitment for a set period also prevents a union member from paying dues for a single payroll period solely to obtain a particular benefit—such as voting in a union election for officers with multiple-year terms—and then dropping membership immediately thereafter, only to join right before the next election or contract-ratification vote. *Id.*

      In addition to the Local 2700-provided Membership Contract, Plaintiff executed a series of separate employer forms prior to the *Janus* decision entitled "Employee Authorization for Payroll Deduction of Membership Dues or Service Fee" (hereinafter "Employee Authorization Form"). Ex. B, Smith Dep. Tr. 38:11-39:2; Ex. D, Smith Dep. Ex. 4; Ex. B, Smith Dep. Tr. 46:15-47:12; Ex. E, Smith Dep. Ex. 6; Ex. B, Smith Dep. Tr. 50:17-51:16; Ex. F, Smith Dep. Ex. 8. An employee had to sign such a form for the Superior Court to begin dues deductions under the then-operative memorandum of understanding between Local 2700 and the Superior Court ("MOU"). Ex. A, Seville Decl. ¶10, Ex. G, Seville Decl. Ex. 1, at 4-5.

      The Employee Authorization Form required Plaintiff to select "union membership," "service fee," or "conscientious objector." Ex. B, Smith Dep. Tr. 38:13-39:6; Ex. D, Smith Dep.

Ex. 4. On January 4, 2016, Plaintiff selected "union membership" on the Employee

Authorization Form, consistent with his decision to execute the Local 2700 Membership

Contract on the same date. Ex. D, Smith Dep. Ex. 4. On September 23, 2016, Plaintiff submitted

to the Superior Court another Employee Authorization Form, on which he selected "service fee"

instead of "union membership," with the intention to resign his Local 2700 membership. Ex. B,

Smith Dep. Tr. 46:17-47:18; Ex. E, Smith Dep. Ex. 6. Plaintiff made this change with the

knowledge that, as a nonmember of the Union, he would no longer be able to vote on Local 2700

matters or obtain other union benefits. Ex. B, Smith Dep. Tr. 44:21-24, 45:21-46:2. Plaintiff,

however, did *not* revoke the dues-deduction authorization in his January 4, 2016 Membership

Contract at that time, as he has acknowledged. *Id.* at 37:15-38:9.

Once Local 2700 received a copy of Plaintiff's September 23, 2016 Employee

Authorization Form, it accepted Plaintiff's resignation from union membership. *Id.* at 32:16-

33:3. At this time, the Superior Court slightly reduced the payments directed to Local 2700 that

were deducted from Plaintiff's biweekly paychecks. Ex. H, at BIEKER002084-2088.

On June 26, 2017, Plaintiff submitted another Employee Authorization Form to the

Superior Court, this time once again selecting "union membership." Ex. B, Smith Dep. Tr.

50:19-25; Ex. F, Smith Dep. Ex. 8. In an email to the Superior Court, Plaintiff explained that he

wanted to "change and become a member again . . . so that I may vote," referring to a desire to

vote on the ratification of a newly negotiated MOU. Ex. B, Smith Dep. Tr. 48:9-50:11; Ex. I,

Smith Dep. Ex. 7. The payments directed to Local 2700 that were deducted from Plaintiff's

paychecks then increased slightly. Ex. H, at BIEKER002113-2117.

On or around July 3, 2018—shortly after the *Janus* decision—Plaintiff sent a letter to

Local 2700. In the first paragraph, he wrote that he "immediately . . . resign[ed] membership in

all levels of the union." Ex. B, Smith Dep. Tr. 52:7-53:2; Ex. J, Smith Dep. Ex. 9. In the next

paragraph, he added that "I request that [the Union] immediately cease deducting all dues, fees,

and political contributions from my wages." Ex. B, Smith Dep. Tr. 52:10-54:13; Ex. J, Smith

Dep. Ex. 9; *see also* Ex. A, Seville Decl. ¶ 8. Plaintiff also asked the Superior Court to stop his

dues deductions, but the Superior Court—following a recently enacted California statute, Cal.

Gov. Code § 1157.12 ("SB 866")—informed him that it had to take direction from the Union as

to whether he had revoked his dues-deduction authorization. ECF No. 52, ¶¶ 14-15.

Under the dues-deduction authorization agreement that Plaintiff executed as part of his

Membership Contract, his next opportunity to revoke his authorization was November 30,

2018—the expiration date of the MOU between Local 2700 and the Superior Court. Ex. A,

Seville Decl. ¶ 10; Ex. G, Seville Decl. Ex. 1, at 1. As a result of Plaintiff's July 3, 2018 letter,

the Union instructed the Superior Court to stop deducting dues from Plaintiff's paycheck as of

November 30, 2018. Ex. A, Seville Decl. ¶ 11. The last such deduction occurred on November

21, 2018, which was the final paycheck that Plaintiff received before November 30. ECF No. 52,

¶ 20. In total, the Superior Court remitted $200.30 to Local 2700 attributable to the period

between July 3 and November 30, 2018 on Plaintiff's behalf. Ex. H, at 2, BIEKER002161-2179.

This litigation commenced on September 6, 2018, when Plaintiff filed a Complaint in this

Court against Local 2700, the Superior Court, and its Chief Executive Officer, Kate Bieker, ECF

No. 1; he subsequently filed an Amended Complaint, ECF No. 8. Plaintiff asserts claims under

42 U.S.C. § 1983, alleging that the continued deduction of dues after his resignation from union

membership violated his First Amendment rights. His Complaint seeks nominal damages from

Local 2700, plus various forms of declaratory and injunctive relief from Local 2700 and CEO

Bieker—including a declaration that SB 866 is unconstitutional. ECF No. 8, Claim for Relief

¶ 23.[1] Plaintiff since has acknowledged that his claims for injunctive relief are moot, ECF No. 60, at 13 n.8, though he continues to seek declaratory relief against CEO Bieker and Local 2700.

Nearly a month after filing his Amended Complaint, Plaintiff moved for a temporary restraining order to stop the Superior Court from deducting union dues from his wages, ECF No. 15, which this Court denied. ECF No. 19. One week later, Plaintiff filed a motion for a preliminary injunction seeking the same relief. ECF No. 22. This Court denied that motion as well, finding that Plaintiff failed to show a likelihood of success on the merits of his First Amendment claim. The Court so concluded because Plaintiff voluntarily had signed a contract obligating him to pay union dues through the end of the contractual period and "cannot now invoke the First Amendment to wriggle out of his contractual duties." ECF No. 36, at 1-2.

## ARGUMENT

### I.   The Court Lacks Jurisdiction over Plaintiff's Claims for Declaratory Relief

Plaintiff seeks a declaratory judgment that several provisions of California law are unconstitutional, namely: (1) Cal. Gov. Code § 71632.5, which allowed a union to negotiate contractual provisions that require nonmembers to pay an agency fee for the costs of union representation; and (2) a provision of SB 866, which, as relevant here, requires government employers to rely on certifications of labor organizations to determine whether an employee has provided and/or revoked a union dues-deduction authorization. ECF No. 8, Claim for Relief ¶¶ D, E, F. As we will show, the Court lacks Article III jurisdiction to issue such a declaratory judgment against Local 2700 or CEO Bieker.

A court has Article III jurisdiction over a claim seeking declaratory relief "only when 'the challenged . . . activity . . . is not contingent, has not evaporated or disappeared, and, by its

---

[1] The Superior Court was voluntarily dismissed as a defendant. ECF No. 40.

continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the . . . parties.'" *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 867 (9th Cir. 2017) (quoting *Seven Words LLC v. Network Sols.*, 260 F.3d 1089, 1098-99 (9th Cir. 2001)). A declaratory judgment cannot be issued where it would "merely adjudicat[e] past violations of federal law." *Id.* at 868. Nor is such a claim justiciable when the declaratory judgment would not "affect[ ] the behavior of the defendant towards the plaintiff." *Id.* (alterations omitted) (quoting *Hewitt v. Helms*, 482 U.S. 755, 761 (1987)).

Applying these principles, the Court lacks jurisdiction over Plaintiff's claims for declaratory relief. First, Plaintiff lacks standing with respect to his claim for a declaratory judgment that Cal. Gov. Code § 71632.5 is unconstitutional. It is undisputed that Plaintiff was a union *member* at the time of the *Janus* decision, *see supra* pp. 4-5, so the statutory provisions allowing for collection of agency fees from *nonmembers* did not apply to Plaintiff at that time. While Plaintiff had union dues deducted from his paycheck for a period of time after the *Janus* decision, those dues were deducted because of the voluntary Membership Contract that Plaintiff signed on January 4, 2016. *See supra* p. 5. Those deductions thus were not caused by the statute permitting the collection of agency fees from nonmembers.

Moreover, even if Plaintiff had been paying agency fees prior to the *Janus* decision, this Court *still* would lack jurisdiction to declare Cal. Gov. Code § 71632.5 unconstitutional. That is because the Superior Court immediately stopped deducting agency fees from fee payers in the bargaining unit after *Janus* was decided. *See* ECF No. 52, ¶ 11.[2] Since the *Janus* decision, five

---

[2] In the aftermath of the *Janus* decision, Local 2700 and the Superior Court renegotiated their MOU to eliminate the agency-fee requirement. *See* ECF No. 50, at 5; ECF No. 52, ¶¶17, 24, and Exs. C and F. Agency fees thus could not be deducted from Plaintiff's paycheck in the future unless the parties—in open defiance of Supreme Court precedent—negotiated a new MOU provision to reintroduce an agency-fee requirement.

courts have considered whether the post-*Janus* cessation of agency fees moots a claim for declaratory relief that a state's agency-fee statute is unconstitutional. All five courts have held that such a claim is moot. *See Carey v. Inslee*, 2019 WL 1115259, at *4 (W.D. Wash. Mar. 11, 2019) (claim is moot because "when the defendants have convincingly proven that they intend to cease following [agency fee statutes], the mere speculative possibility that others could rely on them in the future to the plaintiff's detriment is insufficient to overcome mootness"); *see also Cook v. Brown*, 2019 WL 982384, at *4-5 (D. Or. Feb. 28, 2019); *Lamberty v. Conn. State Police Union*, 2018 WL 5115559, at *8-9 (D. Conn. Oct. 19, 2018); *Yohn v. Cal. Teacher's Ass'n*, 2018 WL 5264076, at *3-4 (C.D. Cal. Sept. 28, 2018); *Danielson v. Inslee*, 345 F. Supp. 3d 1336, 1339-40 (W.D. Wash. Aug. 16, 2018).

Second, the Court lacks jurisdiction over Plaintiff's claim for a declaratory judgment that SB 866, which requires the Superior Court to rely on Local 2700 to decide whether a dues-deduction authorization has been revoked, is unconstitutional. Even on the questionable assumption that Plaintiff had standing to challenge SB 866 when he filed suit,[3] any such claim became moot when Plaintiff's dues deductions stopped on November 30, 2018, in accordance with his Membership Contract. *See supra* p. 5. For Local 2700 to receive any dues deducted from Plaintiff's paychecks in the future, Plaintiff would have to execute a new dues-deduction authorization agreement. Such a speculative possibility cannot confer Article III jurisdiction. *See,*

---

[3] It is entirely speculative for Plaintiff to assume that SB 866 is what caused his post-resignation dues deductions, as Plaintiff cannot show that, if the Superior Court could have conducted a *de novo* review of Plaintiff's Membership Contract, it would have come to a different conclusion than Local 2700 did as to the applicability of the revocability clause. Notably, the Ninth Circuit has held that a bargaining-unit member lacked standing to challenge a provision in a MOU that indemnified a public employer from any liability arising out of agency fee deductions, as the plaintiff could not show that the challenged MOU provision is what caused the alleged constitutional violation (there, an allegedly inadequate notice explaining the basis for plaintiff's agency fees). *Prescott v. Cty. of El Dorado*, 298 F.3d 844, 845-46 (9th Cir. 2002).

*e.g.*, *Carey*, 2019 WL 1115259, at *4. Moreover, such speculation is contrary to Plaintiff's own deposition testimony, in which he unequivocally stated that he could not envision *any* circumstance in which he would rejoin Local 2700. Ex. B, Smith Dep. Tr. 13:20-14:2.

## II.  Even if the Court Had Jurisdiction To Consider Plaintiff's Claim that SB 866 Is Unconstitutional, That Claim Would Fail on the Merits

Plaintiff's claim that SB 866 is unconstitutional is not justiciable for the reasons set forth in Section I, *supra*. Nonetheless, the statute is clearly constitutional, as the Attorney General shows in its brief. Local 2700 fully incorporates the Attorney General's brief by reference here.

## III. Plaintiff's First Amendment Claim for Nominal Damages Fails Because Local 2700 Did Not Act Under Color of Law

Because Plaintiff's claims for declaratory relief are not justiciable, *see supra* pp. 6-9, the sole remaining claim in his Complaint is for nominal damages, brought under 42 U.S.C. § 1983, to compensate Plaintiff for the alleged fact that his First Amendment rights were violated by the payroll deduction of union dues. A prerequisite to a successful claim under 42 U.S.C. § 1983 is that the challenged actions must have been performed "under color of state [law]." For the actions of a private party to satisfy this essential under-color-of-state-law requirement, the "plaintiff must show 'that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State.'" *Caviness v. Horizon Comm. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010) (quoting *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 937 (1982)). As we will show, Local 2700's decision to hold Plaintiff to the terms of the Membership Contract between Plaintiff and Local 2700, which contained a dues-deduction authorization with limited periods of revocability, was *not* "fairly attributable to the State."

The Supreme Court has set forth a two-prong framework for determining when an alleged deprivation of a constitutional right is "fairly attributable to the State." The first prong,

sometimes referred to as the "state policy" requirement, asks whether "the deprivation [is] caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or a person for whom the State is responsible." *Lugar*, 457 U.S. at 937; *see also Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 994 (9th Cir. 2013). The second prong, sometimes referred to as the "state actor" requirement, asks whether "the party charged with the deprivation [is] a person who may be fairly said to be a state actor." *Lugar*, 457 U.S. at 937; *see also Naoko Ohno*, 723 F.3d at 994. A plaintiff must satisfy both prongs in order for a private party's conduct to be attributable to the state. *Collins v. Womancare*, 878 F.2d 1145, 1151 (9th Cir. 1989). Here, neither prong is satisfied.

**A.**     First, Plaintiff cannot show that the alleged First Amendment violation resulted from the exercise of a right or privilege created by, or a rule of conduct imposed by, the state. To determine whether this "state policy" requirement is satisfied, the Court must look to the "source of the alleged constitutional harm." *Naoko Ohno*, 723 F.3d at 994. Here, the source of the alleged constitutional harm—the deduction of dues from Plaintiff's paycheck after he resigned from union membership—is the Membership Contract that Plaintiff signed, which contained a dues-deduction authorization with limited periods of revocability. Neither the Superior Court nor the state drafted that Membership Contract or forced Plaintiff to sign it. *See supra* pp. 2-3. Nor did any state law or policy compel Plaintiff to sign the Membership Contract. Plaintiff claims that the Membership Contract should not have been enforced by Local 2700, but the Union's decision cannot be attributed to a right created by the state or a rule of conduct imposed by the state.

Indeed, another district court within the Ninth Circuit recently held the "state-policy" requirement was not satisfied in addressing a claim very similar to Plaintiff's claim here. In

*Belgau v. Inslee*, 2019 WL 652362 (W.D. Wash. Feb. 15, 2019) (appeal pending), the plaintiffs

brought First Amendment claims under 42 U.S.C. § 1983 challenging the deduction of union

dues from their state-administered paychecks after they resigned their union memberships; the

plaintiffs had signed membership cards that included a "one-year dues payment commitment."

*See id.* at *1, *6. The plaintiffs also challenged the constitutionality of a Washington statute

providing that "[u]pon written authorization of an employee within the bargaining unit . . . the

employer must deduct from the payments to the employee the monthly amount of dues as

certified by the exclusive bargaining representative." Wash. Rev. Code Ann. § 41.80.100.

 The court held that the "state policy" requirement was not satisfied because "the

Plaintiffs fail[ed] to show that the contents of the agreements are in any way attributable to the

State," noting that "the Union, a private entity, drafted the agreements and asked Plaintiff to sign

them." *Belgau*, 2019 WL 652362, at *6. As the court concluded:

> While the Plaintiffs attempt to recast their claim and argue that it is the State
> deductions that are issue, at the same time, they acknowledge that the deductions
> are constitutional if the agreements are valid. At its core, then, the source of the
> alleged constitutional harm is the sufficiency of the agreements, not the procedure
> for their collection that the State agreed to follow. "The claimed constitutional
> deprivation cannot be traced to a right, privilege, or rule of conduct imposed by a
> governmental entity." *Naoko*, at 994.

*Id.* The reasoning in *Belgau* is equally applicable to Plaintiff's claim here, as any harm caused by

the fact that Plaintiff chose to sign his Membership Contract cannot be traced to the state.[4]

Accordingly, Plaintiff cannot meet the "state policy" requirement.

---

[4] The source of Plaintiff's alleged harm differentiates this case from the Supreme Court's
decision in *Lugar*, *supra*. There, the plaintiff argued that a state garnishment procedure—which
allowed one of his creditors to attach his property simply by submitting an *ex parte* petition to a
state court—was the sole cause of his alleged constitutional harm. *See* 457 U.S. at 941. Here, by
contrast, Plaintiff alleges that Local 2700's decision to enforce its Membership Contract—not
any state procedure—is the source of his alleged constitutional harm. After all, if Plaintiff had an
unexpected change of heart and signed a new Membership Contract with a dues-deduction
authorization provision, Plaintiff surely would concede that it would be constitutional for Local

**B.**     Plaintiff also cannot satisfy the equally necessary "state-actor" requirement. "The Supreme Court has articulated four tests for determining whether a non-governmental person's actions amount to state action: (1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test." *Naoko Ohno*, 723 F.3d at 995 (alterations omitted) (quoting *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012)). We address each of the four tests below and show that none is satisfied.

First, Local 2700 did not carry out a public function sufficient to render it a state actor. The nub of the public function analysis is whether the state has delegated a function that was "traditionally the *exclusive* prerogative of the State," *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982), or, in other words, a power "traditionally associated with sovereignty," *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 353 (1974). Examples of such sovereign functions include the running of elections, *see Smith v. Allwright*, 321 U.S. 649 (1944); the administration of an entire town, *see Marsh v. Alabama*, 326 U.S. 501 (1946); and the delegation of jury selection, *see Edmonson v. Leesville Concrete Co.*, 500 U.S. 614 (1991). Plainly, when Local 2700 made the decision that Plaintiff's union dues would continue to be deducted through November 30, 2018, the State had not delegated a sovereign function to Local 2700 akin to running an election, administering an entire town, or selecting a jury.

Plaintiff also cannot show that the state and Local 2700 were joint actors, or that there was a sufficient nexus between them to attribute Local 2700's acts to the state. These two requirements tend to collapse into a single question: whether "there is a sufficiently close nexus

---

2700 to honor his wishes and direct the Superior Court to resume Plaintiff's dues deductions. *See Naoko Ohno*, 723 F.3d at 997 (distinguishing *Lugar* on the ground that, in *Naoko Ohno*, the defendant's challenge "is not to the procedures used to enforce the underlying Japanese judgment in federal court but to the substantive rights and defenses that gave rise to that judgment—which, for present purposes, is analogous to a private contract or debt").

between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). *See also id.* ("The purpose of this requirement is to assure that constitutional standards are invoked only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains."); *Lugar*, 457 U.S. at 939.

Plaintiff claims a First Amendment violation by virtue of his post-resignation dues deductions, *see* ECF No. 8, ¶¶ 20, 23, and argues that the underlying contractual commitment to continue paying dues was invalid, *see* Pl's. Br. 7. As we have noted, the source of his alleged harm is the Membership Contract—which the Union drafted and presented to Plaintiff—and the Union's decision to enforce it. *See American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (noting court's first task in state-action inquiry is to "identify[ ] the specific conduct of which the plaintiff complains" (quoting *Blum*, 457 U.S. at 1004)). The Superior Court had no role in Local 2700's enforcement decision; rather, it merely acquiesced in and reacted to that decision, carrying out the ministerial dues-deduction adjustments required by SB 866.

The courts have made clear, applying both the joint-action and government-nexus tests, that governmental acquiescence in a private party's decision does *not* render that private party's decision state action—even where the government takes an affirmative step to implement the underlying decision without exercising its own independent review. Again, the *Belgau* decision is instructive. There, the court noted that the plaintiffs could not show that the union acted under color of law, given the lack of evidence that "the State Defendants affirm, authorize, encourage, or facilitate the contents of the agreements," and given that the State Defendants "are prohibited from playing a role in the content of the agreements between the Plaintiffs and the Union." *Belgau*, 2019 WL 652362, at *7 (alterations and quotation marks omitted) (quoting *Naoko Ohno*,

723 F.3d at 996). The state's role was therefore solely administrative and did not suffice to implicate the state in the union's conduct under either the nexus or joint-function test. *Id*. at *8.

*Belgau* is in line with Supreme Court and Ninth Circuit precedent finding a lack of state action where the government simply carries out a ministerial function in response to a private party's decision. For instance, in *Blum v. Yaretsky*, 457 U.S. 991 (1982), the Court concluded that private nursing homes' transfer and discharge decisions, which directly affected the patients' state-provided Medicaid benefits, did not constitute state action. *Id*. at 1004-05. The Court focused on the transfer and discharge decisions as the source of harm and relied on the state's non-involvement in those decisions to conclude that there was an insufficient governmental nexus for state action. As the Court explained, the state's role in adjusting "payment of Medicaid benefits after a change in the patient's need for services . . . [did] not constitute approval or enforcement of" the underlying care decision and was "too slim a basis on which to predicate a finding of state action in the [care] decision itself." *Id*. at 1010. *See also McKeesport Hosp. v. Accreditation Council for Graduate Med. Educ.*, 24 F.3d 519, 525-26 (3d Cir. 1994) (state's adoption of medical-school accreditation decisions made by a private entity did not render the accrediting entity a state actor because "state law does not dictate or influence those actions").

Also instructive is the Ninth Circuit's *Naoko Ohno* decision, in which the court, applying the joint-action test, held that the district court's enforcement of a Japanese judgment pursuant to the California Uniform Act did not constitute state action. 723 F.3d 984. Under that state statute, the district court was not allowed to inquire into the merits of the underlying foreign judgment before issuing an enforcement order. The Ninth Circuit held that "[t]he court's *mandatory indifference* to the underlying merits of the judgment Ohno is seeking to enforce refutes any characterization . . . of Ohno's enforcement effort as a joint action." *Id.* at 997 (emphasis added).

As with the Japanese judgment at issue in *Naoko Ohno*, California law required the Superior Court to express "mandatory indifference" to the decision of a private actor—Local 2700—as to whether union dues would be deducted from Plaintiff's paycheck. Specifically, SB 866 required the Superior Court to defer to Local 2700's determination as to whether Plaintiff had revoked his dues-deduction authorization. *See* Cal. Gov. Code § 1157.12(a)-(b). The State therefore washed its hands of any decisionmaking or discretionary function with regard to the dues-deduction authorization in Plaintiff's Membership Contract. *See also Knox v. Westly*, 2006 WL 2374763, at *4 (E.D. Cal. Aug. 16, 2006) (holding that union was not a state actor when it unilaterally decided to increase its dues, even though state implemented change through payroll deduction). Local 2700's decision to enforce the Membership Contract with Plaintiff was thus entirely its own decision, not a joint decision between Local 2700 and the state.

Finally, Plaintiff cannot show that the alleged harm of dues deductions resulted from any state compulsion. While California law *permits* labor unions to enforce a dues-deduction authorization signed by a bargaining-unit member, *see* Cal. Gov. Code § 1157.12(a), legislation that permits a private party to take certain actions is insufficient to amount to the state *compulsion* necessary to make that private party liable under 42 U.S.C. § 1983. *See, e.g.*, *Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 485 (1988) ("Private use of state-sanctioned private remedies or procedures does not rise to the level of state action."); *see also Roberts v. AT&T Mobility LLC*, 877 F.3d 833, 844-45 (9th Cir. 2017) (holding that defendant's decision to enforce arbitration clause did not constitute state action, even though there is a "liberal federal policy favoring arbitration" (quotation omitted)).

In sum, Plaintiff cannot show that Local 2700's actions in enforcing the dues-deduction authorization in his Membership Contract are "fairly attributable to the State." *Caviness*, 590 F.3d at 812. His claim for nominal damages under 42 U.S.C. § 1983 thus fails as a matter of law.

## IV. Even if the Deduction of Plaintiff's Union Dues Amounted to State Action, Local 2700 Did Not Violate Plaintiff's First Amendment Rights

Even if Local 2700 acted under color of state law when it instructed the Superior Court to deduct union dues from Plaintiff's paycheck through November 30, 2018, it did not violate Plaintiff's First Amendment rights in doing so. That is because, as we will show, Plaintiff voluntarily authorized his dues to be deducted through payroll deduction, with a limited period of revocability, in exchange for receiving the benefits of union membership. Under Supreme Court precedent, contracts such as this—in which a party forgoes a First Amendment right in exchange for consideration—are facially valid. We also show that Plaintiff's assertion that he revoked his dues-deduction authorization in September 2016, when he filled out an employer form to resign from union membership, finds no support in the record.

### A. The Supreme Court's decision in Janus does not allow Plaintiff to renege on his voluntary dues-deduction authorization agreement

Plaintiff's Membership Contract contained a dues-deduction authorization, which expressly stated that the authorization is "voluntary and not a condition of my employment" and shall remain in effect "regardless of whether I . . . remain a member of the Union" unless the authorization is revoked during an annual window period preceding the anniversary date of signing the membership contract or the termination date of an MOU between the Union and the Superior Court. Ex. C, Smith Dep. Ex. 3. This dues-deduction authorization was part of a valid, binding membership contract between Plaintiff and Local 2700—as Plaintiff received consideration in the form of membership voting rights and other benefits (such as the opportunity

to receive discounts through one of the union's members-only benefits programs) in exchange for his commitment to pay union dues for a set period of time not exceeding one year. *See* Ex. A, Seville Decl., ¶ 6. Such commitments serve to deter employees from opportunistically resigning from union membership and then re-joining the union when they want to exercise a particular benefit. *See supra* p. 3. Plaintiff's behavior shows that this concern is not hypothetical—he joined Local 2700, resigned from membership nine months later, and then re-joined the union nine months after that so that he could vote on the ratification of an MOU. *See supra* pp. 2-4.

Plaintiff, in rapid succession, puts forward a series of arguments as to why Local 2700 could not enforce the Membership Contract; each argument is unavailing. First, Plaintiff argues that the dues-deduction authorization in his Membership Contract cannot be enforced unless Plaintiff had the "clairvoyance . . . that, more than two years after [he signed his membership contract], the Supreme Court would overrule *Abood* [in *Janus*]." Pl.'s Br. 10-11. This Court already has rejected this argument, holding that "it's not the rights clarified in *Janus* that are relevant to Smith – Smith's First Amendment right to opt out of union membership was clarified in 1977, and yet he waived that right by affirmatively consenting to be a member of Local 2700." ECF No. 36, at 2 (citing *Abood v. Detroit Bd. of Educ.*, 431 U.S. 209, 235-36 (1977)).

Indeed, in *Janus*, the question before the Court was whether it was consistent with the First Amendment to compel *nonmembers* of a union to compensate the union for costs of contract administration and grievance handling as a condition of government employment. 138 S. Ct. at 2460. By contrast, Plaintiff's payment of union dues resulted *not* from state compulsion but from his voluntary decision to enter into a private contractual agreement with the Union, for which he received valuable consideration in return. *See supra* pp. 16-17; *see also Kidwell v. Transp. Commc'n Int'l Union*, 946 F.2d 283, 292-93 (4th Cir. 1991) ("Where the employee has a

choice of union membership and the employee chooses to join, the union membership money is not coerced. The employee is a union member voluntarily.").

It is well-established that "the First Amendment does not confer . . . a constitutional right to disregard promises that would otherwise be enforced under state law." *Cohen v. Cowles Media Co.*, 501 U.S. 663, 672 (1991). In *Cohen*, the Supreme Court rejected the claim that the First Amendment prohibited enforcement of a newspaper's promise not to reveal the identity of a confidential source. The newspaper had breached its promise and the source sued in state court under the quasi-contractual doctrine of promissory estoppel. *Id.* at 666. The Court recognized that the doctrine of promissory estoppel simply "requires those who make certain kinds of promises to keep them," *id.* at 672, and therefore held that the application of promissory estoppel did not "offend the First Amendment." *Id.* at 669.

The same is true with respect to the parties' compliance with the terms of the dues-deduction authorization in the Membership Contract. The continuation of payroll deductions pursuant to an agreement into which Plaintiff freely entered enforces the Union's rights under generally applicable contract law in the same manner as the Supreme Court's enforcement of the newspaper's promise in *Cohen*. *See* 501 U.S. at 668. Under *Cohen*, the First Amendment cannot serve as a license for Plaintiff to renege on his contractual commitment.

Undaunted, Plaintiff insists that his Membership Contract is unenforceable because the "legal landscape" at the time he signed the Membership Contract—namely, that the alternative to becoming a union member was paying an agency fee—affected his decision to join Local 2700. Pl.'s Br. 9-10. But a party cannot rescind a contract simply because its decision to enter into the contract was affected by the state of the governing law at the time, which subsequently changed. For example, in *Coltec Industries, Inc. v. Hobgood*, 280 F.3d 262 (3d Cir. 2002), the Third

Circuit rejected a coal company's attempt to rescind a contract on the ground that it entered into the agreement because of the existence of a statutory provision that the Supreme Court later held unconstitutional; the court reasoned "that a change in law does not, alone, justify such relief, even when the change is based on constitutional principles." *Id*. at 267-68, 277.

Even in cases involving plea agreements—contracts that waive an individual's fundamental right to personal liberty—courts have held that the fact that a defendant may have accepted a plea agreement in part to avoid a fate later deemed unconstitutional does *not* provide a basis for rescission. In *Brady v. United States*, 397 U.S. 742 (1970), for example, the Supreme Court held that "a voluntary plea of guilty intelligently made in light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise." *Id.* at 757. The claimed hardships Plaintiff complains of here pale in comparison to the hardship faced by the defendant in *Brady*, yet that agreement was enforceable notwithstanding the subsequent legal developments and notwithstanding that the defendant forwent his constitutional rights. *Janus* in no way alters this settled precedent.

Relatedly, Plaintiff also argues that he was "coerc[ed]" into signing the Membership Contract when a Local 2700 representative advised him to sign the document because, if he did not join the union, he would be "almost paying" the amount of full union dues. Pl.'s Br. 9. This argument fails on several independent grounds. First, it is not an undisputed fact that a Local 2700 representative made this specific pitch to Plaintiff: In Plaintiff's own deposition fewer than two weeks before Plaintiff filed his summary-judgment motion, he testified that "[t]o be honest, I really can't recall much" of what the union representative said to him and, when pressed about what he recalled about the union representative's presentation during the new employee orientation, he could not provide any specifics. Ex. B, Smith Dep. Tr. 34:3-15. Second, even if a

union representative told Plaintiff that he should join the union because he otherwise would have to pay an agency fee, that does not change the undisputed fact that Plaintiff voluntarily chose to join the union. *See supra* pp. 16-18. Plaintiff *knew* that he had the right to refrain from joining the union as early as his first day of employment with the Superior Court, as he acknowledged during his deposition. *See supra* pp. 2-4. And, third, Plaintiff does not identify any contract doctrine that would permit him to void the Membership Contract based on what would have been an *accurate* statement by a union official: that union dues were only marginally higher than agency fees. The law of duress is to the contrary, as a party can only void a contract on that basis if it was induced to sign the contract by an improper *threat—i.e.*, a communication that instills fear that, unless he signs the demanded contract, he will face some consequence *worse* than the status quo in the absence of a contract. *See* Restatement (Second) Contracts §175(1) (1981).

Plaintiff also argues that the contract he voluntarily entered with Local 2700 is unenforceable because it did not contain a "'knowing' and/or 'intelligent'" waiver of "constitutional rights" addressed in *Janus*. Pl.'s Br. 11. As we have noted, the right that Plaintiff waived when he signed his Membership Contract on January 4, 2016—the right to refrain from joining the union—was long-established by that time. *See supra* p. 17. In all events, the Supreme Court in *Cohen* did not conduct a separate "waiver" analysis or require that the parties use magic words for the newspaper to have waived its constitutional right to reveal its source. Rather, the Court reasoned that the doctrine of promissory estoppel simply "requires those who make certain kinds of promises to keep them." 501 U.S. at 672. The same is true with respect to the enforcement of Plaintiff's contract here.

While Plaintiff makes much of the passage in *Janus* in which the Court held that a nonmember is "waiving" his First Amendment rights when he agrees to make a payment to the

union, *see* Pl.'s Br. 10, the four cases cited in that passage do not aid Plaintiff because they involved litigants who had not affirmatively undertaken any obligations, much less entered into bilateral contracts to perform those obligations in exchange for consideration.[5] As *Cohen*, *Coltec*, and *Brady* make clear, the outcome of these cases would have been different if the affected parties had entered into a contractual agreement to forego a constitutional right in exchange for a benefit. Indeed, in *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board*, 527 U.S. 666, 678 (1999)—one of the cases cited by the Supreme Court in *Janus*—the Court specifically noted that the outcome would have been different had the state entered into a "contractual commitment" to waive its Eleventh Amendment immunity.

Furthermore, none of the cases cited in *Janus* address an individual's decision—such as the decision to become a union member—in which a constitutional right would be "waived" no matter what the individual decides to do. The First Amendment protects both the decision to associate and the decision not to associate with a union. *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 622-23 (1984) (First Amendment protects both "right to associate" and "freedom not to associate"). Any requirement that a union must secure a heightened "waiver" before an individual can join a union, such as a *Miranda*-type warning, would impose special burdens or rules that would make it more difficult for that individual to exercise his First Amendment right *to associate* with the union. That is not consistent with the First Amendment. Plaintiff's preferred regime would also violate the First Amendment by nullifying contracts between unions and their members on grounds that do not apply to other contracts—including contracts between other

---

[5] *See Johnson v. Zerbst*, 304 U.S. 458 (1938) (defendant had not waived Sixth Amendment right to counsel), *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666 (1999) (state had not waived Eleventh Amendment immunity), *Knox v. SEIU, Local 1000*, 567 U.S. 298 (2012) (nonmembers of a union had not waived First Amendment right not to pay a special assessment of union dues), *Curtis Publ'g Co. v. Butts*, 388 U.S. 130 (1967) (defendant had not waived defense that plaintiff had to show actual malice to prevail on libel claim).

associations and their members. This would impermissibly intrude into the internal affairs of unions and their relationships with their members. *See Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000) (it is unconstitutional to "burden th[e] freedom [of association]" through "intrusion into the internal structure or affairs of an association") (internal quotation marks omitted).

Finally, Plaintiff argues that the dues-deduction authorization in his Membership Contract is an invalid assignment of wages under California Labor Code Section 300(b), which provides that "[a]n assignment of wages . . . is revocable at any time." *See* Pl.'s Br. 8. But Plaintiff ignores subsection (g), which expressly provides that Section 300 does not apply to "deductions which the employer may be requested by the employee to make" for certain purposes, including "for charitable, educational, patriotic or similar purposes." Cal. Labor Code § 300(g). Since 1946, the California Attorney General has interpreted this provision to exempt the deduction of union dues from Section 300. 7 Ops. Cal. Atty Gen. 320 (1946) (attached as Ex. K). We are aware of no authority to the contrary. And the Attorney General's opinion is consistent with the California legislature's decision to grant trial court employees "the right to authorize . . . dues deduction from [their] salary or wages" through a statute that long predated *Janus*. *See* Cal. Gov. Code § 71638; *see also* Cal. Stats. 2000, c. 1010 (S.B. 2140), § 14.

> *B. The Employee Authorization Forms that Plaintiff Signed Do Not Alter Local 2700's Ability To Enforce Plaintiff's Membership Contract*

Plaintiff also argues that, even if his Membership Contract were valid when signed, Local 2700 waived its right to enforce the dues-deduction authorization in that contract by failing to object when the Superior Court slightly reduced Plaintiff's deductions in September 2016, after

Plaintiff resigned from union membership by submitting an Employee Authorization Form to the Superior Court. Pl.'s Br. 2-3, 7-9.[6]

When Plaintiff executed a new Employee Authorization Form on September 23, 2016, the Union treated the receipt of that form as Plaintiff's resignation from union membership. Ex. L, Seville Dep. Tr. 32:16-33:3. The Union did *not* treat that form as a revocation of the dues-deduction authorization in his separate Local 2700 Membership Contract, which expressly provided that the authorization would continue, "regardless of whether I am or remain a member of the Union," unless it was revoked at certain periods of time. Ex. C, Smith Dep. Ex. 3. Indeed, Plaintiff testified during his deposition that he did *not* attempt to revoke the dues-deduction authorization in his Membership Contract until after the *Janus* decision. Ex. B, Smith Dep. Tr. 37:15-38:9. That is in stark contrast to Plaintiff's July 3, 2018 letter in which he *did* explicitly revoke his dues-deduction authorization by sending a letter to Local 2700, which requested that the Union "immediately cease deducting all dues, fees and political contributions from my wages." *Id.* at 52:10-54:13; Ex. J. Smith Dep. Ex. 9; *see also* Ex. A., Seville Decl. ¶ 8. The fact that Plaintiff made no comparable revocation in September 2016 is dispositive of his argument.[7]

---

[6] Plaintiff suggests that Local 2700 had an *obligation* to submit the Employee Authorization Forms to the Court as exhibits to its brief in opposition to Plaintiff's motion for a preliminary injunction. Pl.'s Br. 2 (criticizing "Defendants' previous failure to disclose these facts to the Court"). If Plaintiff truly believed that the Forms were relevant to his claims in this lawsuit, he presumably would have attached them to his own preliminary-injunction brief—as Plaintiff received copies of these forms in an email from the Superior Court almost two months before he filed this lawsuit. Ex. M, at MS-0064-0065; *see also* Ex. N, at MS-0080 (email from Plaintiff to Local 2700 representative on August 16, 2018 informing her that there were "3 agreements that I have on file with the Court" that he was "aware of"). Local 2700 did not attach these Forms to its earlier brief because, as explained *infra*, those Forms do not change the critical and dispositive fact that Plaintiff never revoked the dues-deduction authorization in his Membership Contract.

[7] Even if Plaintiff had attempted to revoke his dues-deduction authorization on September 23, 2016, he would not have been able to do so pursuant to the terms of the authorization—which required him to submit any request to revoke between 10 and 20 days before the card's anniversary date or the termination of an MOU. Ex. C, Smith Dep. Ex. 3. Plaintiff's next

Nor does the fact that Local 2700 did not object to the small reduction in the deduction from Plaintiff's paychecks after he resigned from the Union amount to a waiver of the right to enforce the dues-deduction authorization. A party may waive a legal right only by "intentional relinquishment of a known right after full knowledge of the facts." *DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Cafe & Takeout III, Ltd.*, 30 Cal.App.4th 54, 59 (1994). Waiver may be express or implied, but implied waiver can be found only where a party's actions are "so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished." *Old Republic Ins. Co. v. FSR Brokerage, Inc.*, 80 Cal.App.4th 666, 678 (2000). "Mere silence, acquiescence, or inactivity is insufficient to show a waiver of contract rights when there is no duty to speak or act." Williston on Contracts, § 39:35 (4th ed.).

While, after Plaintiff resigned from union membership, the amount that the Superior Court deducted decreased slightly—$3.06 in reduced payments for each pay period, *see* Ex. H, at 1, BIEKER002084-2113—the mere fact that Local 2700 did not object to that slight decrease for the roughly nine months before Plaintiff rejoined the Union is, at most, "silence" or "inactivity" that cannot amount to an intentional relinquishment of Local 2700's right to enforce the Membership Contract. Williston, *supra*. Indeed, Local 2700 never informed Plaintiff or the Superior Court that it was treating Plaintiff's September 23, 2016 Employee Authorization Form as a revocation of the dues-deduction authorization in Plaintiff's Membership Contract.

\* \* \*

For the reasons just shown, Local 2700 justifiably directed the Superior Court to continue to deduct dues from Plaintiff's paycheck through November 30, 2018. But even if Local 2700 incorrectly directed the Superior Court to deduct $200.30 from Plaintiff's wages in the period

---

opportunity to revoke his authorization thus would have been between December 15 and December 25, 2016. *See id.* He did not attempt to revoke his authorization during this period.

from July 3 through November 30, 2018, *see supra* p. 5, those deductions do not violate the First

Amendment, because Local 2700 did not act under color of state law. *See supra* pp. 6-9.

As the Supreme Court has held in another context, state law provides an "alternative,

existing process capable of protecting [ ] constitutional interests." *Minneci v. Pollard*, 565 U.S.

118, 125 (2012) (internal quotation marks omitted) (refusing to extend *Bivens* remedy to action

against private prison guards). Here, that alternative process is set forth in California labor law,

which makes it an unfair practice for a union to direct an employer to deduct union dues from a

bargaining-unit member without the necessary authorization. *See Dep't of Personnel Admin. v.*

*CWA*, PERB Decision No. 609-S, 1987 WL 1435545 (1987) (allegation that union failed to

forward dues deduction cancellation request to employer stated unfair labor practice claim); *cf.*

*Int'l Woodworkers of Am.*, 304 NLRB 100, 100-01 (1991) (unfair labor practice under federal

labor law where union "engaged in an affirmative act to cause" continued dues deductions after

employee resigned membership, where deductions were not authorized).

Thus, if Plaintiff believes that Local 2700 incorrectly directed the Superior Court to

deduct $200.30 from his wages because the Employee Authorization Forms somehow

superseded the Local 2700 Membership Contract, he can file an unfair-practice charge with the

Public Employee Relations Board and obtain complete relief if he is correct. But, because the

Union did not act under color of state law, its decision is not one of constitutional magnitude that

can be adjudicated in federal court through an action brought under 42 U.S.C. § 1983.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Local 2700's motion for summary

judgment and deny Plaintiff's motion for summary judgment.

Dated: March 21, 2019

By: /s/ Jacob Karabell

JACOB KARABELL*, DC 996066
APRIL PULLIUM*, VA 90994
**BREDHOFF & KAISER, PLLC**
805 15th St. NW, Suite 1000
Washington, DC 20005
Telephone:   (202) 842-2600
Facsimile:   (202) 842-1888
Email:       jkarabell@bredhoff.com
             apullium@bredhoff.com


ANDREW H. BAKER, SBN 104197
**BEESON, TAYER & BODINE, APC**
483 Ninth Street, 2nd Floor
Oakland, CA 94607-4051
Telephone:   (510) 625-9700
Facsimile:   (510) 625-8275
Email:       abaker@beesontayer.com


ATTORNEYS FOR DEFENDANT
AFSCME LOCAL 2700

* ADMITTED *PRO HAC VICE*