UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK R. SMITH,<br><br>    Plaintiff,<br><br>  v.<br><br>KATE BIEKER, et al.,<br><br>    Defendants. | Case No. 18-cv-05472-VC<br><br>**ORDER GRANTING MOTION TO DISMISS FOR LACK OF JURISDICTION AND GRANTING INTERVENOR'S AND DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 50, 62, 63, 64, 65 |

  Bieker's motion to dismiss for lack of jurisdiction is granted, and the defendants' and intervenor's motions for summary judgment are granted. Smith's motion for summary judgment is denied.

  1. Smith does not have standing to seek a declaratory judgment regarding the constitutionality of California Government Code Section 71632.5, and even if he did, the claim would be moot.

  There is no standing because section 71632.5 was not enforced against Smith at any time relevant to this lawsuit. That provision permitted state trial courts to establish agency shop arrangements that required employees who opted not to join the union to nonetheless pay a service fee. Smith's lawsuit, however, stems from his commitment to pay membership dues, not from his public employer's enforcement of a now-unconstitutional agency shop arrangement.

  And in any event the claim would be moot because neither the State nor the Superior Court plans to enforce section 71623.5 in the wake of *Janus v. American Federation of State, City, & Municipal Employees, Council 31*, 138 S. Ct. 2448 (2018). Everyone acknowledges the statute is no longer constitutional. The day *Janus* was handed down, the General Counsel of the

State's Public Employment Relations Board announced that the Board would no longer enforce any statutes that require non-union members to pay agency fees (this decision was later officially adopted by the Board on October 11, 2018). *See* De La Torre Declaration ¶¶ 3-7, Dkt. No. 65-3. The next day, Smith's employer also announced it would no longer deduct agency fees. *See* Stone Declaration ¶ 11, Ex. A, Dkt. Nos. 52, 52-1. Because the State and the defendants stopped enforcing the provision before this lawsuit was filed in September 2018, there is no need to entertain Smith's argument that the voluntary cessation doctrine governs. *See Sze v. I.N.S.*, 153 F.3d 1005, 1008 (9th Cir. 1998) ("For the exception to apply . . . the [defendant's] voluntary cessation 'must have arisen *because of* the litigation.'" (quoting *Public Utilities Comm'n v. F.E.R.C.*, 100 F.3d 1451, 1460 (9th Cir. 1996) (emphasis in original)). Regardless, enforcement of the provision is not reasonably expected to recur, for the reasons stated in *Danielson v. Inslee*, 345 F. Supp. 3d 1336, 1338-40 (W.D. Wash. 2018). *See also Bermudez v. Service Employees Int'l Union, Local 521*, No. 18-CV-04312-VC, 2019 WL 1615414, at *1 (N.D. Cal. Apr. 16, 2019); *Carey v. Inslee*, 364 F. Supp. 3d 1220, 1225-27 (W.D. Wash. 2019); *Cook v. Brown*, 364 F. Supp. 3d 1184, 1187-90 (D. Or. 2019).

2. Smith's constitutional challenge to the California statutes that were amended by Senate Bill 866 is also moot, for the reasons given in *Babb v. California Teachers Association*, No. 8:18-cv-00994-JLS-DFM, 2019 WL 2022222, at *17 (C.D. Cal. May 8, 2019). As of November 30, 2018, by operation of the membership agreement between Smith and the union, the Superior Court no longer deducts dues from Smith's paycheck. Again, the voluntary cessation doctrine does not apply because the Superior Court stopped deducting fees by operation of the contract, not because it was responding to Smith's litigation. *Cf. ACLU of Massachusetts v. U.S. Conference of Catholic Bishops*, 705 F.3d 44, 55 (1st Cir. 2013) (concluding that expiration of contract by its own terms is not *voluntary* cessation). And in any event, enforcement of the provision is not reasonably likely to start up again.

3. As a matter of law, Smith is not entitled to a refund of the dues that were deducted from his paychecks from July 2018 (when he resigned) through November 2018. Assuming for

argument's sake only that the union's conduct could be "state action" for purposes of a section 1983 claim,[1] Smith's constitutional rights were not violated by the union's insistence on continuing to collect dues from him for a few more months after he resigned. The continued collection of dues until the next revocation period (which in this case was November 30, 2018) was authorized by Smith's membership agreement. None of Smith's four arguments for getting out of this contractual obligation creates a genuine issue of fact:

  a) Smith contends that *Janus* entitles him to elect to stop paying dues to the union at the drop of a hat. But *Janus* did not concern the relationship of unions and members; it concerned the relationship of unions and non-members. Besides, "the First Amendment does not confer . . . a constitutional right to disregard promises that would otherwise be enforced under state law." *Cohen v. Cowles Media Co.*, 501 U.S. 663, 672 (1991); *see also Fisk v. Inslee*, 759 F. App'x 632, 633 (9th Cir. 2019); *Belgau*, 359 F. Supp. 3d at 1009.

  b) Smith argues that even if *Janus* doesn't automatically undo the membership agreement, the agreement was invalid at its inception because Smith couldn't have knowingly waived a right that he didn't yet have (namely, the right to avoid paying union fees as a non-member). But changes in intervening law – even constitutional law – do not invalidate a contract. *See Brady v. United States*, 397 U.S. 742, 757 (1970); *Dingle v. Stevenson*, 840 F.3d 171, 174-76 (4th Cir. 2016).

  c) Smith also argues that the membership agreement was invalid at its inception because at the time he joined, a union representative encouraged him to sign up, saying the benefits of joining outweighed the discount he would get by declining membership and instead paying agency fees. *See* Smith Deposition at 41, Dkt. No. 62-6. On its face and as a matter of law, the representative's statement – as described by Smith – doesn't amount to an improper threat, fraud, or duress. *See Int'l Technologies Consultants, Inc. v. Pilkington PLC*, 137 F.3d 1382, 1390 (9th Cir. 1998); Restatement (Second) of Contracts § 175 (1981).

---

[1] *But see Belgau v. Inslee*, 359 F. Supp. 3d 1000, 1012-15 (W.D. Wash. 2019).

d) Smith argues that the union gave up its right to enforce the contract in 2018 because previously, between September 2016 and July 2017, it had declined to enforce the agreement against him. To argue that the union's inaction in the face of Smith's past breach constitutes a waiver of its rights to enforce the contract, Smith would have to show that he detrimentally relied on the acquiescence. *See* 13 Williston on Contracts § 39:35 (4th ed.). He doesn't present evidence of any such reliance. He rejoined the union in July 2017 knowing that he would have to pay the full dues amount to receive the union's benefits. And when he re-resigned the union in July 2018, he did so in reaction to the rights he thought *Janus* gave him. *See* Smith Deposition at 13, Dkt. No. 63-3. Smith provides no evidence that the union's alleged acquiescence to his past breach caused him to believe he could quit at any time, contrary to the membership agreement's terms, without consequences.

**IT IS SO ORDERED.**

Dated: June 13, 2019

_____
VINCE CHHABRIA
United States District Judge

4